IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HECTOR ALVARADO, | ) | CASE NO.  3:16-CV-02563 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| vs. | ) | |
| | ) | |
| WARDEN, MANSFIELD | ) | MAGISTRATE JUDGE |
| CORRECTIONAL INSTITUTION,[1] | ) | JONATHAN D. GREENBERG |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2.  Before the Court is the

Petition of Hector Alvarado ("Alvarado" or "Petitioner"), for a Writ of Habeas Corpus filed pursuant to 28

U.S.C. § 2254.  Alvarado is in the custody of the Ohio Department of Rehabilitation and Correction

pursuant to journal entry of sentence in the case *State v. Alvarado*, Lucas County Court of Common Pleas

Case No. G-4801-CR-201301381.  For the following reasons, the undersigned recommends that this case

be stayed and held in abeyance to allow Alvarado the opportunity to present his unexhausted claims to the

state courts.  It is further recommended that the stay be granted on the condition that Alvarado (1) file

quarterly status reports in this Court regarding the progress of his state court appeal; and (2) seek

reinstatement on this Court's active docket within thirty (30) days of fully exhausting his state court

remedies.

---

[1] In his Amended Traverse, Alvarado states he was incarcerated at Ohio State Penitentiary at the beginning of his federal habeas proceedings but has since been transferred to Mansfield Correctional Institution.  (Doc. No. 89 n.1.)  The Court substitutes the Warden of Mansfield Correctional Institution, Tim McConahay, for the Warden of Ohio State Penitentiary.  *See Gornall v. Clipper,* No. 1:18CV1102, 2020 WL 820731, at *1 n.1 (N.D. Ohio Feb 18, 2020); *Stevens v. Turner*, No. 3:17CV1245, 2019 WL 6251454, at *1 n.1 (N.D. Ohio Nov. 22, 2019).

# I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts underlying Alvarado's conviction as follows:

> {¶ 2} In the early morning hours of New Year's Day, 2013, a fight broke out at the South Beach Bar on Alexis Road in Toledo, Lucas County, Ohio. Christine Henderson suffered a fatal wound to her neck and her fiancée, Stacy Bowen, suffered a non-fatal laceration to his upper arm. Appellant, Hector Alvarado, was indicted on one count of murder in violation of R.C. 2903.02(B) and R.C. 2929.02, and one count of felonious assault in violation of R.C. 2903.11(A)(2). The case proceeded to trial by jury. The following is a summary of the evidence presented.

> {¶ 3} Megan Gibson, an employee at the South Beach Bar and Grill, testified that she was working the door in the early morning hours of New Year's Day 2013 when "the bar broke out into a riot." She did not witness the assault on Bowen or Henderson. She did, however, clean-up a large amount of blood in the area Henderson was standing before she walked outside and died in the bar's parking lot.

> {¶ 4} A bar patron, Charles Wells, testified that he and three of his friends were on the bar's back patio "smoking weed and drinking beer" when the violent, yet short-lived, fight began. He entered the bar, but never engaged in the fighting. Instead, he stood back and observed the commotion, keeping his eye on appellant because he was "the biggest guy in the bar."

> {¶ 5} Wells explained that during the fight appellant had "an object" in his hand. He observed appellant swing the object and noted that "everybody he swung on hurried up and got away from him." Wells admitted that his view was obstructed at times because "bodies was [sic] moving, chairs was [sic] flying, people was [sic] swinging."

> {¶ 6} At one point, Wells observed appellant near Henderson. He explained, "I seen him swing on her and she walk [sic] away, she grabbed her neck and walk [sic] away.  But I didn't know what had happened right then and there." Wells explained that appellant had the object in his hand when he "swung on" Henderson.

2

{¶ 7} Before the fight completely subsided, Wells and his friends left the bar through the front door. Wells explained what he observed when he stepped outside:

A:      All I seen was cars, but I immediately spinned around because it was a crowd of people coming out, there was some people coming out, so then when I seen who was coming out, I turned around and started walking backwards and tripped off the curve.

Q:      Did you see [appellant]?

A:      He came out right behind me.

Q:      What did you see him with?

A:       I seen him with a Mexican girl in one hand. I seen him with a knife in another hand.

Q:       Sure it was a knife?

A:      Clearly I seen the knife. I wouldn't turn my back to him because I just seen him get into it with all these black people and I didn't want him to stab me too. I had my brother and them in the car. They made it in the car. I was walking backwards and my brother and them kept saying, Chuck, get in the car; Chuck, get in the car. I said fuck that. I'm watching him. He got a knife.

Q:       How long did you watch him?

A:       All the way until I got in the car.

{¶ 8} Wells explained that he and his friends came back to the bar later that morning so they could give another friend, a bouncer, a ride home. It was then that he heard Henderson had died and that Bowen had killed her with a bottle. He explained, "I said, hell, no, [appellant] did it."

{¶ 9} Wells did not talk to the police in the early morning hours of New Year's Day 2013. He did, however, receive a phone call from Detective Goodlet on January 8, 2013. He told the detective what he saw and agreed to come down to the station and give a recorded statement. He explained,

A:       * * * And the only reason why I really, really went down there, because like I say, I know the family and they was saying that the girlfriend's boyfriend was the one that stabbed her with a bottle and I said, hell no, huh-uh, no. And then I called my friend Dave which [sic] was the bouncer there that night and he asked me was I going down there and I said I'm going to go down there and talk to him.

> Q:    Did you ever voluntarily talk to the police before?
>
> A:    Never in my life. Where I come from that's a snitch.

{¶ 10} Wells was able to identify himself on surveillance video and various still photos taken from the video. On cross examination, Wells testified that he and Bowen were not "friends" but that he knew Bowen from the neighborhood and had played basketball with him. He also admitted that he knew Henderson because she drove a recognizable vehicle, a "hot pink truck * * * with cartoon characters on it."

{¶ 11} Dr. Diane Scala–Barnet, a deputy coroner for Lucas County, performed an autopsy on Henderson. She classified Henderson's death as a homicide and determined that a stab wound to the left side of her neck caused a complete transection of the carotid artery. In her opinion, the fatal wound was caused by an instrument with one sharp edge and one dull edge. She ruled out any suggestion that a broken bottle could have caused the wound.

{¶ 12} Dr. Scala–Barnet described the wound track as "lateral to medial and downward." In her opinion, Henderson likely received the wound from a frontal attack but she could not rule out the possibility that the wound was received from an assailant standing behind her. When asked whether it was possible for Henderson to have received the wound while bent over, Dr. Scala–Barnet stated, "[t]hat would be harder to get the downward trajectory * * * It's not impossible, but it's harder to get in there." Dr. Scala–Barnet agreed that if Henderson did receive the wound while bent over, "the assailant would almost certainly have to be lower than her." However, she added that it all depended on where the assailant was positioned relative to the Henderson's body.

{¶ 13} Dr. Scala–Barnet indicated that immediately after being stabbed, blood would have started spurting from Henderson's wound and death would have occurred within a matter of minutes. She indicated that Henderson would have been able to walk after being stabbed, but that she would have felt light headed very quickly.

{¶ 14} Bowen testified that he became involved in the melee after he noticed several of his male friends fighting with people he had never seen before. He didn't know why the fight started and indicated he had no success in trying to break things up. He did not recall fighting with appellant.

{¶ 15} Bowen identified himself, Henderson, and appellant on surveillance footage taken at the bar during the fight. He did not see appellant stab Henderson but he recalled—and the surveillance footage corroborated—that the three of them were in close proximity to each other in the moments before Henderson grabbed her neck and walked away from the melee. However, a table lifted-up and thrown during the fight, obscured the camera at the exact moment Henderson likely received the fatal stab wound to her neck.

{¶ 16} Detective William Goodlet of the Toledo Police Department testified that he interviewed Bowen shortly after the fight. While Bowen admitted to participating in the fight, he was unable to identify anyone he was fighting.

{¶ 17} Detective Goodlet went to a local hospital after receiving information that another potential witness, Basilia Smith, was being treated for injuries she received during the fight. When questioned, Smith admitted to being at the bar and receiving injuries during the melee. However, she was too intoxicated to provide any additional information helpful to the detective's investigation.

{¶ 18} A few hours after he interviewed Smith, Detective Goodlet received surveillance video from the bar's numerous interior and exterior cameras. The time frame of the preliminary video spanned from 1:39:00 a.m. through 2:15:00 a.m. The detective and his team watched the video in real time but found it grainy and "really tough to follow." Detective Goodlet and his team of investigating officers made a determination to start analyzing footage of the back lot where Henderson's body was found and work back in time in an effort to determine where and when she was injured. At the time, they knew the identities of very few people in the bar. During this period of the investigation, appellant's identity was unknown, but he was one of several "persons of interest" because of his proximity to the victims during the melee.

{¶ 19} A short time later, Detective Goodlet obtained additional surveillance video. After the Detective and his team watched the additional footage, they invited Bowen back in to the station and showed him still shots of the footage. Bowen was able to identify himself, but was not able to identify any of the suspects.

{¶ 20} About a week after the incident, Detective Goodlet received a call from one of the men who had been working security inside the bar. Based upon that conversation, Detective Goodlet made contact with Wells. Detective Goodlet described his first phone conversation with Wells, as follows:

He told me what he had seen, where he was at, he stated he was at the bar with his brother. He's—he's having a good time. There's somebody yelling, security, security, security. He comes out, sees just fighting. People fighting everywhere. He states he runs out of the bar and while he's outside the bar, he sees a large Hispanic male come out of the bar. He's got a girl in his right hand and he's got a knife in his left hand. He said he saw this Hispanic male run, run from the scene, and he said that's the guy, he did it.

A week later Wells came down to the station.  During a recorded interview, but after Wells identified a "big Mexican with tattoos on his head," Detective Goodlet showed Wells still shots from the surveillance video.  Wells was able to point out the appellant.

{¶ 21} At trial, Detective Goodlet indicated that the majority of Wells' recorded statement was consistent with Wells' testimony in court, with one exception; during the recorded interview, Wells did not indicate that "he observed [appellant] punching or making some striking movement at Miss Henderson."

{¶ 22} Video footage from outside the bar demonstrated that appellant arrived at 12:46 a.m. with three women.  A few moments later, video footage from inside the bar depicted the three women walking past the bouncer without being patted down. Detective Goodall testified that the video showed appellant entering the bar after being given a "cursory pat down * * * at best."  Detective Goodall pointed out that the bouncer did not pat appellant down towards his ankles or around his back.

{¶ 23} Video footage demonstrates that appellant was on the bar's back patio until approximately 1:55 a.m.  At that time, appellant moved into the view of camera 3, inside the bar.  At 1:55:58 a.m., appellant is seen on footage from camera 3 and camera 12, seated, taking a brief phone call.  There is no sign of any fighting. At 1:59:29 a.m., appellant abruptly stands up.  At the same time, camera 11 depicts a fight on the dance floor.  In the moments that follow, appellant walks out of and then back into the view of camera 12.  Bowen is in the middle of the ruckus, but appellant is not engaged in the fight.

{¶ 24} At 2:00:32 a.m., appellant is seen speaking with one of the women he came into the bar with.  Thereafter, appellant moves away from the camera and out of view.  At 2:01:42 a.m., Bowen is depicted on camera 12; his shirt and hat are off, and he is picking up and throwing a chair towards the ruckus.  At the same time, appellant moves back into view on the far side of the screen.  The video footage on camera 12 depicts no fewer than 17 individuals participating in or in close proximity to the ruckus.

{¶ 25} At 2:01:51 a.m., Henderson is depicted on the left front side of camera 12. Appellant is depicted on the center back of the camera's footage.  No one appears to be attacking appellant, although a chair is thrown in his general direction.  At 2:01:54 a.m., Bowen engages with an unidentified individual.  At 2:01:55 a.m., appellant moves toward Bowen and the unidentified individual.  Two frames later, appellant and Bowen are depicted near an exit door, arms swinging.  At the same time, two individuals in the forefront of the screen pick up chairs, while a third individual picks up a table.  At 2:01:58 a.m., Henderson can be seen on the edge of the screen just to the left of Bowen.  The table obscures the camera's view of appellant, Bowen, and Henderson.

{¶ 26} Detective Goodall identified both Bowen and Henderson at 2:01:59 a.m. fully engaged in the ruckus.  Ms. Henderson appears to be bending over and moving away from the ruckus while Bowen remains engaged with two other individuals.  Henderson then stands up and backs away from the commotion.  At 2:02:00 a.m., Henderson puts her left hand up to the left side of her neck.  She then exits the view of camera 12 while Bowen continues to engage in the ruckus.

6

The view of appellant is obscured for four or five frames. At 2:02:05 a.m., Bowen throws a chair towards appellant and runs out of the view of camera 12. Appellant pushes a few individuals out of the exit door, grabs one of the girls he came in with and exits the bar at 2:02:17 a.m.

{¶ 27} Meanwhile, at 2:02:07 a.m., on camera 3, Henderson is seen walking across the lobby area of the bar towards the bouncer's chair. Detective Goodall points to what he describes as "discoloration" on her shirt and explains that Henderson appears with her left hand on the left side of her neck, under her long dark hair. At 2:02:12 a.m., Wells is seen exiting the bar from the main lobby area. At 2:02:27 a.m., Bowen exits. A dark circle is visible on his upper left bicep in the area of his stab wound.

{¶ 28} At 2:02:31 a.m., on footage from camera 16, appellant is seen running through the parking lot with a woman, a second woman following close behind. Appellant and both women climb into a pick-up truck, appellant in the passenger seat, and drive towards the entrance to the bar.

{¶ 29} Before the conclusion of Detective Goodall's direct examination, he indicated that to his knowledge, only two individuals received stab wounds during the fight: Henderson and Bowen. A third individual, Smith, was treated at the hospital for injuries inconsistent with a knife wound.

{¶ 30} On cross examination, Detective Goodall confirmed he did not find a knife associated with appellant nor did he find any blood stained clothes in appellant's possession.

{¶ 31} Detective Goodall also confirmed that when he spoke with Wells on January 15, 2013, Wells did not mention that he saw appellant strike Henderson in the neck.

{¶ 32} A recording of appellant's interview with police was shown to the jury. During the interview, appellant indicated he went to the bar with a few girls and he wasn't there long before the fight broke out. He denied seeing any weapons other than beer bottles and chairs. When asked whether he stabbed Henderson, he shook his head "no."

{¶ 33} Following the presentation of evidence, the jury found appellant guilty of murder in violation of R.C. 2903.02(B) and 2929.02, an unspecified felony. Alvarado was found not guilty of felonious assault. The trial court sentenced Alvarado to 15 years to life in prison.

*State v. Alvarado*, 2015 WL 139519 (Ohio Ct. App. Jan. 9, 2015).

## II.      Procedural History

**A.      State Court Proceedings**

### 1.      Trial Court

The January 2013 session of the Lucas County Grand Jury issued an indictment charging Alvarado with one count of murder in violation of Ohio Rev. Code § 2903.02(B) and 2929.02 and one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2).  (Doc. No. 12-1, Ex. 1.)  Alvarado entered a plea of not guilty.  (Doc. No. 12-1, Ex. 2.)

The matter proceeded to jury trial.  On August 23, 2013, the jury found Alvarado guilty of murder, but not guilty of felonious assault or the lesser included offense of aggravated assault.  (Doc. No. 12-1, Ex. 3.)  On September 10, 2013, the trial court sentenced Alvarado to a prison term of 15 years to life.   (Doc. No. 12-1, Ex. 4.)

### 2.      Direct Appeal

On October 3, 2013, Alvarado, through the same counsel, filed a notice of appeal to the Sixth District Court of Appeals of Ohio ("state appellate court").  (Doc. No. 12-1, Ex. 5.)  In his merit brief, Alvarado raised the following four assignments of error:

I.      Prosecutorial misconduct occurred in the State's rebuttal closing when the State impermissibly referred to the content of Appellant's character and the Appellant acting in conformity with that character.

II.      The trial court abused its discretion by not sanctioning State for a discovery violation over the objection of defendant.

III.      Appellant's conviction was against the manifest weight of the evidence.

IV.      There was insufficient evidence to sustain Appellant's conviction.

(Doc. No. 12-1, Ex. 6.)  The State filed a brief in opposition.  (Doc. No. 12-1, Ex. 7.)  The state appellate court affirmed Alvarado's conviction and sentence on January 9, 2015.   *State v. Alvarado*, 2015 WL 139519 (Ohio Ct. App. Jan. 9, 2015).

On February 20, 2015, Alvarado, through new counsel, filed a notice of appeal to the Ohio Supreme Court.  (Doc. No. 12-1, Ex. 9.)  In his Memorandum in Support of Jurisdiction, Alvarado raised the following five Propositions of Law:

I.     Defective jury instructions that deprive a defendant of substantive rights constitute plain error as described in Crim. R. 52(B) and may be considered by the reviewing court although the error was not objected at trial.

II.     When a prosecutor makes impermissible and prejudicial statements in reference to a defendant's character during closing arguments, such comments are improper and prejudicially affect the defendant's constitutional right to a fair trial.

III.     Defendant is effectively denied his constitutional right to assistance of counsel where counsel's performance is deficient and there is a reasonable probability that counsel's deficient performance prejudiced defendant, depriving him of his due process right to a fair trial.

IV.     An appellate court has a duty to reverse the conviction and order a new trial where a trial court's verdict is against the manifest weight of the evidence.

V.     A judgment may be reversed if the cumulative effect of multiple errors deprives a defendant of his constitutional rights even though, individually, the errors may not rise to the level of prejudicial error or cause for reversal.

(Doc. No. 12-1, Ex. 10.)  The State filed a brief in opposition.  (Doc. No. 12-1, Ex. 11.)

On July 22, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct. Prac. R. 7.08(B)(4).  (Doc. No. 12-1, Ex. 12.)

### 3.     Application to Reopen Appeal

Meanwhile, on April 7, 2015, Alvarado, through counsel, filed an Application to Reopen his Appeal pursuant to Ohio App. R. 26(B).  (Doc. No. 12-1, Ex. 13.)  Alvarado argued appellate counsel was ineffective for failing to raise the following arguments on direct appeal:

I.     Defendant was effectively denied his constitutional right to effective assistance of counsel during trial.

II.     Defective jury instructions deprived Defendant of his right to a fair trial.

III.     Prosecution's impermissible and prejudicial statements during closing arguments denied Defendant his Constitutional Right to a Fair Trial.

IV.  The Cumulative Prejudicial Effect of the Multiple Errors Defendant Suffered During Trial Deprived Him of Constitutional Rights and Warrant Reversal.

(Doc. No. 12-1, Ex. 13.)  The State filed a brief in opposition.  (Doc. No. 12-1, Ex. 14.)  The state appellate court denied Alvarado's Application on June 8, 2015 on the merits.  (Doc. No. 12-1, Ex. 15.)

On July 17, 2015, Alvarado, through counsel, filed a notice of appeal to the Ohio Supreme Court. (Doc. No. 12-1, Ex. 16.)  In his Memorandum in Support of Jurisdiction, Alvarado raised the following Propositions of Law:

I.  When reviewing an application to re-open an appeal, the appellate court owes Appellant the right to consider the merits of a claim where it is apparent in the record that there is genuine issue with regard to counsel's effectiveness, in violation of Appellant's constitutionally guaranteed right to the effective assistance of counsel.

II.  When considering an application to re-open an appeal, when presented with genuine issue of with regards to counsel's effectiveness, the appellate court should be required to entertain arguments previously waived as evidence of counsel's alleged ineffectiveness.

(Doc. No.12-1, Ex. 17.)  The State filed a brief in opposition.  (Doc. No. 12-1, Ex. 18.)

On September 30, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 12-1, Ex. 19.)

### 4.  Motion for Leave to File Motion for New Trial

On December 18, 2015, Alvarado, through counsel, filed a Motion for Leave to File a Motion for New Trial in the state trial court.  (Doc. No. 12-1, Ex. 21.)  Therein, Alvarado argued he was entitled to a new trial based on newly acquired evidence that supported his claims of innocence, ineffectiveness of trial counsel, and prosecutorial misconduct both before and after trial.  Most notably, Alvarado attached an affidavit dated November 11, 2015 from the State's key witness, Charles Wells, in which Mr. Wells averred, in relevant part, as follows:

3.  The reason I am here is to clear my conscious.  I feel bad.  I was coached by the prosecutor and persuaded to lie on the stand.  I did not know at the time that I would be their only witness and my testimony was material to their case.  Now

10

Hector is serving a life sentence due to my testimony.  I am here today to go on the record and set things straight.

\* \* \*

5.      What happened that night was that we were at the bar, me and a few of my brothers and friends.  A fight jumped off and there was a commotion, ripping, running, and people standing off in the cut.  I seen the fight and I seen my friend the bouncer trying to break the fights up.  After the fight was over, I left the club with my brothers and friends.

6.      I didn't really see nobody with no knife.  When I got outside, all I knew was the police was pulling up.  We were waiting on my friend Dave, the bouncer, to see if he needed a ride.  He told me a girl got stabbed but he didn't need no ride.

7.      A couple of days later, me and my friend Dave was talking and he told me the girl died and it was flashing across the news.  My friend Dave reminded me of who Christina Henderson was.  Dave used to mess around with her mother.  I remember the girl.  I spent a lot of time in the house when she was young, and her mother always treated us like family.  She used to cook for us and stuff.

8.      Everyone was mad, I couldn't believe she was dead.  The family was so upset, I knew I had to help.

9.      Next thing I know, Dave told me a bunch of people had been subpoenaed and a bunch of people had already talked.  Detectives asked if I would come down and talk too.

10.     When I got down there, I already had a case pending.  My house got raided for cocaine, heroin, weed, pills, etc. so I was thinking "what can you do for me?"  When I first talked to the Prosecutor, they ran the screen the showed me the [surveillance] tape.

11.     There was so much commotion, I couldn't really identify the man they wanted me to identify.  The prosecutor pointed him straight out to me and I just rolled with it.  The Prosecutor talked him so bad and told me he just got out on felonious assault.  He said "I just want that fucker back in there so bad" and that was when he pointed him out to me.  I did remember seeing Hector, he is noticeable, but I didn't even know who he was and couldn't see him on the video.

12.     Even when the Prosecutor pointed Hector out on video, I didn't see any knife in his hand.  I did see him fighting, but there was a whole lot of people fighting.  There was so much commotion going on I don't think anyone saw who had a knife.

13.     Later, I seen Hector in the parking lot leaving, I still didn't see a knife.

14.     The Prosecutor said "I will do everything I can to make it go away." [it being the pending charges].  After he promised me that he would make everything go away, he disappeared.  I could never get ahold of him and I ended up doing time.

15.     The family was so upset I thought I was doing the right thing.  It's been on my conscious, it's been weighing on me.

* * *

17.     In addition, I want to go on the record and say that [Alvarado's trial counsel] Attorney John Thebes owes me money for a case.  He promised to represent me on a charge in 2012, on CRB-12-01061-0202 and appeared twice on my behalf, but never saw the case through.  The whole trial with Hector, he never acted like we knew each other and never refunded any of my money.

(Doc. No. 12-1, Ex. 21 at Page ID#409-410.)

In his motion, Alvarado argued "Wells' affidavit shows that the prosecution, in bad faith, failed to disclose material evidence favorable to defendant, violating Alvarado's due process rights and denying him the right to a fair trial."  (*Id.* at Page ID#387.)  Alvarado also asserted "the prosecution's failure to disclose Wells' prospective deal constitutes a *Giglio* [*v. United States*, 405 U.S. 150 (1972)] claim and *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] error."  (*Id.* at Page ID#389.)  Finally, Alvarado argued "Wells' affidavit, in conjunction with Alvarado's affidavit, shows that Alvarado was effectively denied his constitutional right to assistance of counsel."  (*Id.* at Page ID#396.)

Also on December 18, 2015, Alvarado filed a Petition for Post-Conviction Relief pursuant to Ohio Rev. Code § 2953.23.  (Doc. No. 12-1, Ex. 22.)  The Petition incorporated by reference Alvarado's Motion for Leave to File Motion for New Trial and supporting affidavits.  (*Id.*) The Petition raised the following sole ground for relief:

I.      Freestanding actual innocence mandating relief under the Federal and Ohio Constitutions.

(*Id.*)  The State moved to dismiss Alvarado's Motion for Leave and Post-Conviction Petition primarily on the grounds they were untimely filed.  (Doc. No. 12-1, Ex. 23, 24.)

12

On March 16, 2016, the state trial court denied Alvarado's Motion and Petition on the grounds Alvarado had "failed to establish that he was unavoidably prevented from timely discovering the evidence on which he now relies, and that [Alvarado] has not submitted sufficient evidence of unavoidable delay to merit a hearing on the matter." (Doc. No. 12-1, Ex. 25.)

On April 14, 2016, Alvarado, through counsel, filed a notice of appeal to the state appellate court. (Doc. No. 12-1, Ex. 26.)  In his merit brief, Alvarado raised the following grounds for relief:

I.     The trial court abused its discretion when it denied Mr. Alvarado's motion for leave to file a motion for new trial, without holding a hearing on the issue of whether Mr. Alvarado was unavoidably prevented from discovery of the key witness's recantation.

II.    The trial court erred as a matter of law in denying Mr. Alvarado's petition for post-conviction relief without holding a hearing on the issue of whether Mr. Alvarado was unavoidably prevented from discovery of the key witness's recantation.

(Doc. No. 12-1, Ex. 27.)  The State filed a brief in opposition, to which Alvarado replied.  (Doc. No. 12-1, Ex. 28; Doc. No. 26, Ex. 36.)

On May 12, 2017, the state appellate court affirmed the trial court's denial of Alvarado's Motion for New Trial and Petition for Post-Conviction Relief.  (Doc. No. 26, Ex. 37.)  The state appellate court explained as follows:

{¶28} Here, appellant was convicted in August 2013, and he filed his motion for leave to file a motion for new trial and petition for postconviction relief -in December 2015, well beyond the120-day limit in Crim.R. 33 and the 360-day limit set forth in R.C. 2953.23(A).  Thus, appellant was required to establish that he was unavoidably prevented from timely discovering the evidence upon which he relies.  Moreover, in order for appellant to be entitled to a hearing on his motion for leave or petition for postconviction relief, the evidence submitted to the trial court by appellant must have, on its face, supported his claim that he was unavoidably prevented from timely discovering the evidence upon which he now relies.

{¶29} As an initial matter, we note no argument or issue was raised by appellant at the trial court level or in his briefs before us concerning the timeliness of discovery of the information in the affidavits of Basilia Smith, Nolberto Armenta, DeAna and Mario Parraz and the Toledo Police Department Supplemental Crime

13

Report of Detective Rider, which sets forth a summary of Wells' interview with Detective Goodlet, all of which were filed by appellant in support of his motion for leave and petition for postconviction relief. We will therefore only concern ourselves with whether the affidavits of appellant and Wells, on their face, support the claim that appellant was unavoidably prevented from timely discovering the new evidence on which he relies.

{¶ 30} A review of appellant's affidavit and Wells' affidavit reveals no indication as to why or when Wells had a change of conscience and decided to cooperate and recant his trial testimony. There is no averment in either affidavit as to what prompted Wells to contact appellant's current counsel, or when or how Wells became aware of appellant's current counsel. In addition, neither affidavit mentions why appellant nor his counsel did not or could not contact Wells prior to November 2015, when Wells executed his affidavit, to secure Wells' cooperation.

{¶31} In light of the foregoing, we find the affidavits on their face fail to establish that appellant was unavoidably prevented from discovering the new evidence upon which he now relies. Thus, the trial court did not abuse its discretion in denying both appellant's motion for leave to file a motion for new trial and petition for postconviction relief without holding a hearing. Accordingly, appellant's assignments of error are not well-taken.

(*Id.* at PageID# 1303-1304.)

On June 23, 2017, Alvarado, through counsel, filed a notice of appeal to the Ohio Supreme Court.

(Doc. No. 26, Ex. 38.) In his Memorandum in Support of Jurisdiction, Alvarado raised the following four

Propositions of Law:

I. A defendant's due process rights are violated and he is unavoidably prevented from discovering new evidence when the prosecution (1) withholds material, exculpatory evidence, and (2) knowingly presents false evidence at trial. 5th and 14th Amendments to the United States Constitution; Article I, Section 16, Ohio Constitution; Crim. R.33(B).

II. The requirement in Criminal Rule 33(B) that a defendant show by clear and convincing proof that he was "unavoidably prevented from the discovery of the evidence upon which he must rely" before he may file a motion for new trial based on newly discovered evidence does not require the defendant to contact the prosecution's witnesses and implore them to recant their trial testimony. Crim. R. 33(B). U.S. Const. 6th and 14th Amend.

III. A defendant is denied his right to the effective assistance of counsel when his trial and appellate attorney has an undisclosed conflict of interest that prevents him from timely discovering exonerating evidence, failed to investigate corroborating

14

witnesses, and failed to properly advise on plea. U.S. Const. 6th Amend.; Article I, Section 10, Ohio Constitution.

IV.     The conviction and incarceration of an innocent person violates the United States Constitution.  U.S. Const. 8th and 14th Amend.

(Doc. No. 26, Ex. 39.)  The State filed a brief in opposition.  (Doc. No. 26, Ex. 40.)

On January 30, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  (Doc. No. 26, Ex. 41.)

## B.     Proceedings in this Court

On October 20, 2016, Alvarado, through counsel, filed his original Petition, raising the following nine grounds for relief:

I.      The prosecutor violated Petitioner's right to a fair trial by improper and prejudicial statements.

II.     The State violated Petitioner's rights to due process and fair trial when it suppressed favorable, material evidence.  *Brady v. Maryland*, 373 U.S. 83 (1963).

III.    The State violated Petitioner's right to due process and fair trial when it presented false evidence or allowed it to go uncorrected.

IV.     The evidence against Petitioner is insufficient to sustain his conviction, thus violating Petitioner's due process rights under the 14th Amendment.

V.      Petitioner is actually innocent of the crime for which he was convicted, and his convictions violate the 14th Amendment.

VI.     The trial court violated Petitioner's rights to due process and fair trial by erroneously instructing the jury and relieving the State from its burden of proving every element of the offense charged beyond a reasonable doubt.

VII.    Petitioner was denied his constitutional right to assistance of counsel provided by the Sixth Amendment.

VIII.   Petitioner was denied his right to effective assistance of appellate counsel. U.S. Const. Amends. VI and XIV.

IX.     Petitioner was denied his constitutional right to conflict free counsel when his attorney had both represented Petitioner and the State's main witness against Petitioner.

15

(Doc. No. 1.)[2]

Shortly thereafter, on October 28, 2016, Alvarado filed a Motion for Stay and Abeyance.  (Doc. No. 5.)  In his Motion, Alvarado argued his Second, Third, Fifth, Seventh and Ninth Grounds for Relief were not yet exhausted because they were raised in his Motion for Leave to file Motion for New Trial and Petition for Post-Conviction Relief, both of which were the subject of his then-pending appeal in the state appellate court.  Alvarado maintained his habeas petition should be stayed because "there is good cause for his failure to exhaust his claims, his claims are potentially meritorious, and he has not intentionally engaged in dilatory tactics."  (*Id.* at 4.)  Respondent filed a cursory opposition to Alvarado's Motion to Stay on November 17, 2016, in which it principally argued the Motion was "premature."  (Doc. No. 9.)

On December 27, 2016, Respondent filed its Return of Writ, along with portions of the state court record.  (Doc. No. 12.)  Therein, Respondent argued the majority of Alvarado's claims (including those that were the subject of his Motion to Stay) were procedurally defaulted.  (*Id.*)  Respondent further maintained Alvarado had failed to establish cause and prejudice, or actual innocence, to excuse the default. (*Id.*)

On February 7, 2017, the undersigned issued a Report & Recommendation that Alvarado's Motion to Stay be granted in order to allow him to exhaust his Second, Third, Seventh, and Ninth Grounds for Relief.  (Doc. No. 17.)  No objections were filed, and, on March 3, 2017, the Report & Recommendation was adopted, and the instant matter was stayed.  (Doc. No. 18.)  Alvarado was instructed to (1) file quarterly status reports in this Court regarding the progress of his state court appeal; and (2) seek reinstatement on this Court's active docket within thirty days of fully exhausting his state court remedies. (*Id.*)

---

[2] In his Traverse, Alvarado withdrew his Sixth Ground for Relief.  (Doc. No. 32 at 38.)

16

Alvarado filed Quarterly Status Reports on March 28, June 28, September 29, and December 29, 2017.  (Doc. Nos. 19, 20, 21, 22.)  On February 26, 2018, Alvarado filed a Notice that he had exhausted his claims in state court, and requested the Petition be reinstated to the Court's active docket.  (Doc. No. 23.)  Alvarado's request was granted shortly thereafter, and this matter was referred to the undersigned for further proceedings.  (Doc. No. 24.)

On March 2, 2018, the undersigned ordered Respondent to supplement the state court record to reflect proceedings occurring during the stay of the instant Petition.  (Doc. No. 25.)  Respondent filed a Supplemental State Court Record on April 2, 2018.  (Doc.  No. 26.)

On May 8, 2018, Alvarado filed a Motion for Discovery regarding his Second, Third, Seventh, and Ninth Grounds for Relief.  (Doc. No. 28.)  Therein, he requested leave to conduct the depositions of Charles Wells; defense attorney John Thebes; Toledo Police Detectives William Goodlet and Tonya Rider; and Lucas County Prosecutors Michael Bahner, Clinton Wasserman, and Charles McDonald.  (*Id.* at 2.)  Alvarado also sought leave to obtain copies of (1) all files concerning his own prosecution; (2) all files concerning the prosecution of Charles Wells in Lucas County Court of Common Pleas Case Nos. G-4801-CR-201302717-000 and G-201301780-000; and (3) all files "concerning the incident at the South Beach Bar and Grill on December 31, 2012 and January 1, 2013, and the murder of Christina Henderson and assault on Stacey Bowen, in possession of the Toledo Police Department."  (*Id.*)  Respondent filed a brief in opposition, to which Alvarado replied.  (Doc. Nos. 30, 31.)

On May 21, 2018, Alvarado filed a Motion to Expand/Complete the Record, in which he sought an Order requiring Respondent to submit the exhibits from his underlying state court trial.  (Doc. No. 29.)  Respondent filed a brief in opposition, to which Alvarado replied.  (Doc. Nos. 33, 34.)

Meanwhile, and while these Motions were pending, Alvarado filed his Traverse on June 1, 2018.  (Doc. No. 32.)  Respondent filed a Sur-Reply to the Traverse on June 18, 2018.  (Doc. No. 35.)

On September 18, 2018, the undersigned granted in part (as to Grounds Two and Three) and denied in part (Grounds Seven and Nine) Alvarado's Motion for Discovery (Doc. No. 28) and granted his Motion to Expand/Complete the Record (Doc. No. 29).  (Doc. No. 36.)  On September 21, 2018, Respondent filed objections to the Order granting the motion for discovery (Doc. No. 37), to which Alvarado responded (Doc. No. 38).  On November 5, 2018, the Court accepted the undersigned's Order granting in part and denying in part the motion for discovery and granting the motion to expand/complete the record.  (Doc. No. 39.)

Alvarado had until September 30, 2019 to file a motion for leave to amend his petition and/or traverse and a motion to expand the record.  (Non-document Order dated July 22, 2019.)  On September 30, 2019, Alvarado filed his: (1) Motion for Leave to File an Amended Petition or in the Alternative to File an Amended Traverse (Doc. No. 73); (2) Motion to Expand the Record under Rule 7 (Doc. No. 72); and (3) Unopposed Motion for Order to File Exhibit Under Seal (Doc. No. 71).

On October 2, 2019, the Court granted Alvarado leave to file an exhibit under seal.  (Doc. No. 74.)

On October 30, 2019, Respondent filed responses in opposition to Alvarado's motion to amend and motion to expand the record (Doc. Nos. 76, 77), to which Alvarado replied (Doc. Nos. 78, 79).

On February 3, 2020, the undersigned granted in part and denied in part Alvarado's motion for leave to amend and motion to expand the record and set a new briefing schedule.  (Doc. No. 80.)

On February 18, 2020, Respondent filed objections to the undersigned's Order.  (Doc. No. 82.)

On June 3, 2020, the Court determined the undersigned's Order would not be set aside as clearly erroneous or contrary to law.  (Doc. No. 85.)

Pursuant to an unopposed motion to amend the briefing schedule (Doc. No. 83), which the Court granted (Non-document Order dated February 21, 2020), Alvarado had thirty days from the Court's June 3, 2020 Order to file an Amended Petition.

On July 6, 2020, Alvarado filed his Amended Petition, raising the following nine grounds for relief:

I.     The prosecutor violated Alvarado's right to a fair trial by making improper and prejudicial statements.

II.    The State violated Petitioner's rights to due process and fair trial when it suppressed favorable, material evidence. *Brady v. Maryland*, 373 U.S. 83 (1963).

III.   The State violated Petitioner's rights to due process and fair trial when it presented false evidence or allowed it to go uncorrected.

IV.    The evidence against Petitioner is insufficient to sustain his conviction, thus violating Petitioner's due process rights under the 14th Amendment.

V.     Petitioner is actually innocent of the crime for which he was convicted, and his convictions violate the 14th Amendment.

VI.    The trial court violated Petitioner's rights to due process and fair trial by erroneously instructing the jury and relieving the State from its burden of proving every element of the offense charged beyond a reasonable doubt.[3]

VII.   Petitioner was denied his constitutional right to assistance of counsel provided by the Sixth Amendment.

VIII.  Petitioner was denied his right to the effective assistance of appellate counsel. U.S. Const. amends. VI and XIV.

IX.    Petitioner was denied his constitutional right to conflict free counsel when his attorney had both represented Petitioner and the State's main witness against Petitioner.

(Doc. No. 86.)

On September 4, 2020, Respondent filed the Return of the Writ.  (Doc. No. 88.)  Alvarado filed an Amended Traverse on October 5, 2020.  (Doc. No. 89.)  On October 20, 2020, Respondent filed a Sur-Reply.  (Doc. No. 90.)

### III.     Non-cognizable Claims

Respondent argues "[t]here is no provision of the United States Constitution that supports" Alvarado's claims regarding the detectives' destruction of their handwritten notes after information was

---

[3] As stated *supra* in n.2, Alvarado withdrew this ground for relief in his Traverse.

19

included in their reports, the prosecutor's failure to "memorialize notes from witness interviews" and failure to preserve emails, and intermingling of the prosecutor's Alvarado and Wells files.  (Doc. No. 88 at 19-20.)  Alvarado does not directly respond to this argument in his Amended Traverse.  (Doc. No. 89.)

Respondent argues, "To the extent that Alvarado's fifth ground for relief alleges a free-standing claim to relief on the grounds of actual innocence, his claim is not cognizable before this court and, accordingly, does not serve as a ground for habeas relief."  (Doc. No. 88 at 21.)

Alvarado points to the Supreme Court's decision in *Herrera v. Collins*, 506 U.S. 390 (1993), arguing that "[b]y speculating that the standard for proving a freestanding claim of actual innocence would be 'extraordinarily high,' the Supreme Court indicated its belief that there could be a situation where a provably innocent person's incarceration would violate the constitution."  (Doc. No. 89 at 65.)  Alvarado claims the Supreme Court "again implied" such a claim is cognizable in *In re Davis*, 557 U.S. 952 (2009). (*Id.* at 66.)  Alvarado asserts that since *Herrera*, courts in the Third, Eighth, and Ninth Circuits have recognized a freestanding claim of actual innocence.  (*Id.* at 65.)  Alvarado also maintains that state courts have recognized such a claim.  (*Id.* at 65-66.)

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth below, the Court does not reach the merits of the parties' arguments with respect to the cognizability of Grounds Two and Five.

## IV. Exhaustion and Procedural Default

### A.    Legal Standard

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b), (c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990).

20

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97S.Ct. 2497, 53 L.Ed.2d 594 (1977)). A claim may become procedurally defaulted in two ways. *Id.* First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.; see also Maupin v. Smith*, 785F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[4] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac,* 456 U.S. 107, 125 n. 28, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731–32, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lovins*, 712 F.3d 283, 295 (6th Cir. 2013) ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.") This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are

---

[4] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138–39; *Barkley v. Konteh*, 240 F. Supp. 2d 708 (N.D. Ohio 2002). "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)." *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue-not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138–39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice

22

requires showing that the trial was infected with constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219–20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (citing *Strickler v. Greene*, 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S.722, 749–50, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).  Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995).  *See also Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007); *Allen v. Harry*, 497 F. App'x 473, 480 (6th Cir. 2012).

### B.     Application to Petitioner

#### 1.     Ground One

Respondent argues Alvarado failed to properly exhaust the portion of Ground One pertaining to a "'third' remark made during closing arguments" by raising this issue for the first time in the Supreme Court of Ohio, and Alvarado fails to demonstrate cause or prejudice, or identify new, reliable evidence of actual innocence, to excuse the default.  (Doc. No. 88 at 26-29.)

Alvarado responds this portion of Ground One was raised as his Third Assignment of Error in his 26(B) Application, and so fairly presented this portion of his claim to the state courts.  (Doc. No. 89 at 95.) In addition, Alvarado argues the Sixth Circuit's decision in *Whiting v. Burt*, 395 F.3d 602 (6th Cir. 2005)

stands for the proposition that fair presentment does not require him to specify every factual allegation in support of a claim. (*Id.* at 96.) Therefore, by presenting "the substance" of his prosecutorial misconduct constitutional claim to the state court of appeals and the Supreme Court of Ohio, he has properly exhausted this portion of Ground One. (*Id.*)

Alvarado also argues that, assuming *arguendo* this portion of Ground One is procedurally defaulted, he can show cause and prejudice to excuse the procedural default. (*Id.* at 98.) However, in a footnote, Alvarado asks that should the Court find this claim is not exhausted, the Court stay his Amended Petition so that he may present his claim in state court, as Alvarado "could not have discovered the evidence Respondent claims is unexhausted until he was provided it in federal discovery." (*Id.* at 101 n.12.)

In the Sur-Reply, Respondent also argues Alvarado waived this portion of Ground One, and waiver is an adequate and independent state ground to bar this portion of Alvarado's claim. (Doc. No. 90 at 8.)

In Alvarado's brief in the state appellate court, appellate counsel argued, "At *two* points during the rebuttal closing argument by the state Appellant objected to improper argument by the state when reference was made to Appellant's character." (Doc. No. 12-1, Ex. 6, PageID#174) (emphasis added). Nowhere in Alvarado's brief did counsel mention the third alleged improper remark by the prosecutor: "I'm not saying that he is a violent guy. He looks like he could be." (Doc. No. 12-1, Ex. 10, PageID#252.) In fact, the only place this comment appears in the state's appellee brief, in the context of a longer excerpt of the rebuttal argument. (Doc. No. 12-1, Ex. 7, PageID#205.) The state appellate court decision only incorporated the portions of the rebuttal argument asserted by Alvarado in his brief. *State v. Alvarado*, 2015 WL 139519, at *6.

In his brief to Supreme Court of Ohio, new counsel for Alvarado argued, "In this case, the prosecutor exploited the court's latitude over closing statements and on three separate occasions made inappropriate remarks referencing Defendant's character, permeating the closing argument and effectively depriving Defendant his right to fair trial."  (Doc. No. 12-1, Ex. 10, PageID#251.)  New counsel noted the Prosecutor's third remark was not objected to by trial counsel.  (*Id.* at PageID#252.)

In *Whiting*, the Sixth Circuit found the petitioner had fairly presented his claim where, although he "did not specifically argue at any length the fact that appellate counsel had also been trial counsel, thus creating a conflict of interest which, in addition to being a cause of failing to include claims in the direct appeal, resulted in prejudice to Defendant," petitioner had made a passing mention of the conflict in the following sentence contained in his motion for relief from judgment: "'Since the same attorney represented the Defendant at the appellate levels, it is not surprising that the issues concerning ineffective assistance of counsel were not raised at that time.'"  395 F.3d at 614-15.  Therefore, the Sixth Circuit determined a "claim of ineffective assistance of counsel, with an alleged conflict of interest component, was fairly presented to the Michigan courts in the collateral relief proceedings."  *Id.* at 615.  That is not the case here.

While Alvarado maintains he raised this issue in his 26(B) application, his application only contains the following statement with respect to the prosecutorial misconduct claim: "While previously noticed, Appellate Counsel was ineffective in demonstrating how thoroughly the prosecutor misconduct permeated the closing argument, effectively depriving Defendant his right to fair trial."  (Doc. No. 12-1, Ex. 13, PageID#304.)  Such a vague argument fails to sufficiently state the legal basis for the claim.  *See Wagner v. Smith*, 581 F.3d 410, 416 (6th Cir. 2009) ("General references to 'pervasive misconduct' and 'irrelevant and prejudicial evidence' simply do not serve as a fair presentation of the specific claim that the prosecutor impermissibly brought up two murders not at issue in the trial.").

25

Furthermore, even if Alvarado's 26(B) application was construed to include the third remark by the prosecutor, it is well-established that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct." *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008). Alvarado maintains the state court of appeals "'indicated that the decision rested on an evaluation of the merits of his claim,'" thus preserving his underlying prosecutorial misconduct claim. (Doc. No. 89 at 99). But the state appellate court did not consider the merits of the underlying prosecutorial misconduct claim; rather, the state appellate court stated, "Appellant raised this issue in his first assignment of error in his direct appeal. Upon review, we determined that the prosecutor did err. However, we determined that Alvarado was not prejudiced by the prosecutor's statements . . . Therefore, this issue cannot now provide a basis for finding that appellate counsel was ineffective. Alvarado's third assignment of error is not well taken." (Doc. No. 12-1, Ex. 15, PageID#338.) *Cf. James v. Brigano*, 470 F.3d 636, 640-42 (6th Cir. 2006) ("The Ohio Court of Appeals' lengthy opinion denying James's motion to reopen does not frame its rejection of James's underlying claims as a failure to find prejudice or on procedural grounds, but instead rejects those claims on their merits."); *Patterson v. Haskins*, 316 F.3d 596, 605 (6th Cir. 2003). It is clear the state appellate court relied on its previous determination regarding Alvarado's prosecutorial misconduct claim to determine that Alvarado could not show the prejudice necessary to establish ineffective assistance of counsel.

As stated above, exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims

could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*  However, in his Amended Petition, Alvarado argues the three remarks were planned, relying on trial notes obtained from the prosecutor's office during discovery in his federal habeas proceeding.  (Doc. No. 86 at 29-30.)

Respondent argues that Alvarado's allegation that the prosecutor's allegedly improper comments during closing argument were "planned" has never been presented to the state court, nor has his arguments that Wells was not looking in the victim's direction when the State alleged she was stabbed and the Crime Stoppers Tips.  (Doc. No. 88 at 29-30; Doc. No. 90 at 12.)  As Respondent recognizes, "Alvarado may file a motion for a new trial and/or petition for postconviction relief in order to pursue those claims," and the state court should have "the opportunity to exercise its discretion in favor of the availability of the remedy."  (Doc. No. 88 at 30; Doc. No. 90 at 12) (citing *Cunningham v. Hudson*, 756 F.3d 477, 484 (6th Cir. 2014); *Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009); *Godbolt v. Russell*, 82 F. App'x 447, 450 (6th Cir. 2003)).[5]  Respondent "urges" the Court to dismiss Alvarado's Amended Petition, rather than stay the case and hold it in abeyance, as Alvarado has not met the requirements under *Rhines v. Weber*, 544 U.S. 269 (2005).  (Doc. No. 88 at 30; Doc. No. 90 at 12.)  In the alternative, Respondent asks the Court to allow Alvarado to "delete" the unexhausted claims from his Amended Petition and proceed with his exhausted claims.  (*Id.*)

---

[5] In order for the state courts to consider a second post-conviction petition, Alvarado must show: (a) that he "was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right"; and (b) "by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence."  O.R.C. § 2953.23(A)(1)(a)-(b).

Alvarado denies he has raised additional claims that require exhaustion; rather, "he cites to supporting evidence that was produced following this Court's grant of discovery."  (Doc. No. 89 at 101.) Alvarado maintains he "has consistently alleged that the prosecutor violated his right to a fair trial by making improper and prejudicial statements during closing argument," and "variations in legal theory or factual allegations do not render his claim unexhausted."  (*Id.*) (citing *Whiting*, 395 F.3d at 613).[6] In a footnote, Alvarado states, "Though Alvarado maintains this claim is exhausted, if this Court finds otherwise, he respectfully requests that this Court stay the petition so that he may present the claim in state court . . . Alvarado could not have discovered the evidence the Respondent claims is unexhausted until he was provided it in federal discovery."  (Doc. No. 89 at 101 n.12.)  Alvarado further asserts his claim is potentially meritorious and he has not engaged in dilatory tactics.  (*Id.*)

In *Rhines v. Weber*, 544 U.S. 269, 275 (2005), the Supreme Court recognized that, "as a result of the interplay between" AEDPA's one-year statute of limitations and the total exhaustion requirement of *Lundy*, "petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims.  If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review."  Accordingly, the Court determined that, in the case of a mixed petition, a district court has the discretion to employ a "stay and abeyance" procedure:

> Under this procedure, rather than dismiss the mixed petition. . . a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims. Once the petitioner exhausts his state remedies, the district court will lift the stay and allow the petitioner to proceed in federal court.

*Id.* at 275-76.

---

[6] *See* the Court's previous discussion of *Whiting*, *supra*.

The Court cautioned that "stay and abeyance should be available only in limited circumstances," because it "has the potential to undermine . . . AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Id.* at 277.  Accordingly, the Court determined that stay and abeyance is appropriate only where the petitioner can show: (1) good cause for his failure to exhaust; (2) that his unexhausted claims are not "plainly meritless"; and (3) that there is no indication that the petitioner engaged in "intentionally dilatory litigation tactics."  *Id.* at 277-78; *see also Wagner v. Smith*, 581 F.3d 410, 419 (6th Cir. 2009).  Generally, to show good cause for a failure to exhaust state remedies, a petitioner must show why he failed to use available state remedies timely and appropriately.  *See Hoffman v. Lazaroff,* 2015 WL 5729578 at * 3 (N.D. Ohio Sept. 28, 2015); *Petkovic v. Clipper*, 2015 WL 3948194 at * 6 (N.D. Ohio June 26, 2015).  Further, in *Rhines*, the Supreme Court opined that a stay should be entered if the unexhausted claim was "potentially meritorious."  544 U.S. at 278.

As stated earlier, the Court disagrees that *Whiting* is analogous to the instant case.  In order to properly exhaust his claims, Alvarado must present the same legal *and factual* bases for his claims to the state courts as the federal district court.  *Cunningham*, 756 F.3d at 482 ("Exhaustion under 28 U.S.C. § 2254(b) requires presentation of the same factual basis to the federal habeas court that was presented to the state court.")  In *Cunningham*, the Sixth Circuit found the petitioner had not exhausted his claim of juror bias based on a juror's alleged relationship to the families of the victims where the juror bias claim presented to the state courts was premised on the juror's knowledge of the petitioner from her colleagues. *Id.*  As Alvarado admits, the factual support for his prosecutorial misconduct claim has changed as a result of obtaining information in discovery during this habeas case.  (Doc. No. 89 at 101.)  Accordingly, the Court finds the instant habeas petition is a "mixed" petition.  Thus, the Court will proceed to consider the remaining *Rhines* factors; *i.e.*, (1) whether Alvarado has shown good cause for his failure to exhaust;

29

(2) whether his unexhausted claims are not "plainly meritless," and (3) whether there is any evidence that Alvarado engaged in "intentionally dilatory litigation tactics."

Respondent argues Alvarado fails to demonstrate good cause for the following reasons: (1) the bar surveillance videos were a part of the trial record and (2) open file discovery was provided and Alvarado "acknowledges" the Crime Stoppers Reports were obtained from the Lucas County Prosecutor's Office files during discovery in this federal habeas case.  (Doc. No. 90 at 12-13.)  But those arguments have nothing to do with whether Alvarado can show good cause as to his failure to exhaust the "third remark" portion of Ground One, including his allegation that the prosecutor's notes show the comments at issue were planned.  Alvarado certainly would not have received the prosecutor's trial notes in open discovery during his criminal case below.  There is no question Alvarado did not become aware of these notes until well after his initial state post-conviction petition, and only received those notes through discovery allowed in this federal habeas proceeding.  *Cunningham*, 756 F.3d at 486.  Therefore, the Court finds Alvarado has demonstrated "good cause" for having failed to exhaust this portion of Ground One.

Whether this claim is potentially meritorious is a closer question.  The Supreme Court set forth the standard for claims of prosecutorial misconduct in habeas proceedings in *Darden v. Wainwright*, 477 U.S. 168 (1986). It held that to prevail on such claims, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned."  *Id.* at 181 (internal quotation marks and citation omitted). Rather, "'[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)).  *See also United States v. Young*, 470 U.S. 1, 11 (1985) ("Nevertheless, a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

The *Darden* standard "is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations ....'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Yarlborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Courts may consider: (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally. *Wogenstahl v. Mitchell*, 668 F.3d 307, 328 (6th Cir. 2012). "The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Id.* at 329 (quoting *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009)).

Respondent argues an anticipated answer to a question in the prosecutor's direct examination of Wells came from Wells and not the prosecutor, and the jury was informed that arguments are not evidence. (Doc. No. 90 at 13.)  Alvarado cites to his arguments supporting the merits of his claim in Ground One to show his claim is potentially meritorious (Doc. No. 89 at 101 n.12), but part of that argument relies on information available at trial (alleging Wells was looking away from the fight at the time the victim was stabbed).  (*Id.* at 5-21.)  The state appellate court determined the comments were improper based on the record before it, but Alvarado suffered no prejudice.  *State v. Alvarado*, 2015 WL 139519, at *7.  But Alvarado alleges the prosecutor's trial notes show that the comments were deliberate and planned, not inadvertent.  (Doc. No. 86 at 29-30; Doc. No. 89 at 15-16.)  Furthermore, Alvarado's argument with respect to Ground One is tied to his argument in Ground Three that the prosecutor presented false testimony that bolstered the prosecutor's improper comments in his rebuttal closing argument.  (Doc. No. 89 at 15-17.)  In his argument in support of Ground Three, Alvarado relies on Crime Stopper tips that he only received in discovery in this federal habeas case.  (*Id.* at 49-51.)  As a result, and as will be discussed in greater detail *infra*, this factual basis for Ground Three also has not been presented

31

to the state courts.  For all of these reasons, the Court cannot say, at this stage of the proceedings, that this portion of Alvarado's First Ground for Relief is "plainly meritless."

Lastly, the Court finds there is no evidence that Alvarado has engaged in intentionally dilatory litigation tactics.  Wells executed his recantation affidavit in November 2015, and Alvarado promptly filed his Motion for Leave to file New Trial Motion and Petition for Post-Conviction Relief in state court the following month.  Alvarado filed his federal habeas petition on October 20, 2016 and has been diligently pursuing his rights both in the state courts and this court since that time.  Accordingly, with respect to the unexhausted portion of Ground One, Alvarado has satisfied the *Rhines* standard for a stay and abeyance in this case.

### 2.    Ground Two

#### a.    Charles Wells Affidavit

Respondent argues Alvarado's claim that the prosecutor suppressed material, exculpatory evidence as identified in Charles Wells' affidavit is procedurally defaulted as the state courts found Alvarado's filings for post-conviction for relief untimely, which is an adequate and independent state ground to foreclose habeas review.  (Doc. No. 88 at 31.)  Respondent further argues Alvarado fails to demonstrate cause and prejudice to excuse the procedural default, and fails to present any new, reliable evidence to excuse the default.  (*Id.* at 33-34.)

Alvarado argues in response:

> Ohio's procedural rules do not always satisfy the *Maupin* test. Ohio does not have a "firmly established and regularly followed" procedural rule governing the timeliness of delayed new trial motions in the Ohio courts. The rules are particularly unsettled where a delayed motion for new trial is based on evidence of a *Brady* violation, as it was here. In fact, the Supreme Court of Ohio recently accepted for review a case raising the issue of whether Ohio's "law regarding postconviction does not provide adequate relief when a defendant's rights are violated in contravention of *Brady*, because it unconstitutionally shifts the burden to defendant") [sic].

(Doc. No. 89 at 102-03) (citations omitted).

32

Alvarado further argues that, even assuming *arguendo* the Court finds Ground Two procedurally defaulted, Alvarado can establish cause and prejudice to excuse the default.  (*Id.* at 103.)  In addition, Alvarado has made a sufficient showing "to pass through the actual innocence gateway" and have the Court consider his claim on the merits.  (*Id.* at 111.)

Alvarado presented the portion of Ground Two based on the evidence presented in Wells's recantation affidavit to the state courts in his motion for leave to file a motion for new trial (Doc. No. 12-1, Ex. 21, 27; Doc. No. 26, Ex. 36, 39), which the state trial court found untimely.  (Doc. No. 12-1, Ex. 25.)  The state appellate court affirmed.  (Doc. No. 26, Ex. 37.)

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth herein, the Court does not reach the merits of the parties' arguments with respect to this portion of Ground Two.

### b.    Prosecutor's Notes and Other Claims

Respondent argues that Alvarado "appears to allege as error the detectives [sic] destruction of their handwritten notes after the information was incorporated into their reports" and "that the prosecutor failed to memorialize notes from witness interviews" and preserve emails, claims which have not been presented to the state courts.  (Doc. No. 88 at 34.)   Respondent "urges" the Court to dismiss Alvarado's Amended Petition, rather than stay the case and hold it in abeyance, as Alvarado has not met the requirements under *Rhines v. Weber*, 544 U.S. 269 (2005).  (*Id.* at 35.)  In the alternative, Respondent asks the Court to allow Alvarado to "delete" the unexhausted claims from his Amended Petition and proceed with his exhausted claims.  (*Id.*)

Alvarado does not directly respond to this argument; rather, Alvarado's response set forth above applies to Ground Two in its entirety.  (Doc. No. 89 at 101-11.)  However, in support of his response, Alvarado relies on evidence produced in discovery during this federal habeas proceeding, including the

33

"intermingled and incomplete" Wells and Alvarado files from the prosecutor's office and that the detectives and prosecutors "admittedly failed to document substantial portions of the investigation and its prosecution (such as Bahner's interviews with Wells) or to maintain all relevant documents." (*Id.* at 105.) As Alvarado admits, "[I]t was not until this Court's grant of discovery that Alvarado could fully understand how Wells's changing story aligned with critical stages of his own cases, which were not resolved until after the conclusion of Alvarado's trial . . . Nor could Alvarado have discovered the Crime Stopper tips, which the State failed to disclose until this Court granted discovery." (*Id.* at 106.) Therefore, the factual support for his *Brady* and *Giglio* claim has changed as a result of obtaining information in discovery during this habeas case. There is no question this changed factual basis for his claim has not been presented to the state courts.

Respondent argues Alvarado fails to meet the *Rhines* criteria, but only specifically addresses the "potentially meritorious" prong. (Doc. No. 88 at 35.) In support of this argument, Respondent points to the fact that "[o]pen file discovery was provided," Wells's statements were provided by the Toledo Police Department and so "Alvarado cannot dispute that he was aware of [them]," and "Alvarado cannot cite any United States Supreme Court precedent" that requires police departments to "preserve handwritten notes in addition to the typed reports incorporating those notes," nor requiring a prosecutor's office to "memorialize interviews or to preserve e-mails where there is no evidence of any exculpatory information." (*Id.*)

There is no question Alvarado did not become aware of this information until well after his initial state post-conviction petition, and only received this information through discovery allowed in this federal habeas proceeding. *Cunningham*, 756 F.3d at 486. Therefore, the Court finds Alvarado has demonstrated "good cause" for having failed to exhaust this portion of Ground Two.

Further, the Court finds this portion of Ground Two is not "plainly meritless," *i.e.*, they are potentially meritorious.  It is well established that a claim under *Brady* and its progeny contains three parts: "(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The Court acknowledges that recantation affidavits are viewed with skepticism.  *See e.g. Carter v. Mitchell*, 443 F.3d 517, 519 (6th Cir. 2006); *Byrd v. Collins*, 209 F.3d 486, 508 n 16 (6th Cir. 2000). However, given that Wells was the key witness against Alvarado, "the case largely turned on [Wells'] testimony," and Alvarado points to further evidence obtained in discovery during this federal habeas proceeding that he maintains support Wells's recantation affidavit (Doc. No. 89 at 105-06), the Court cannot say, at this stage of the proceedings, that this portion of Alvarado's Second Ground for Relief is "plainly meritless."

Lastly, the Court finds there is no evidence that Alvarado has engaged in intentionally dilatory litigation tactics.  Wells executed his recantation affidavit in November 2015, and Alvarado promptly filed his Motion for Leave to file New Trial Motion and Petition for Post-Conviction Relief in state court the following month.  Alvarado filed his federal habeas petition on October 20, 2016 and has been diligently pursuing his rights both in the state courts and this court since that time.  Accordingly, with respect to the unexhausted portion of Ground Two, Alvarado has satisfied the *Rhines* standard for a stay and abeyance in this case.

### 3.    Ground Three

#### a.    Charles Wells Affidavit

Respondent argues Alvarado's claim that the prosecutor knowingly presented false testimony, based in part on claims contained in Wells' affidavit, is procedurally defaulted as the state courts found

35

Alvarado's filings for post-conviction for relief untimely, which is an adequate and independent state ground to foreclose habeas review. (Doc. No. 88 at 35-36.) Respondent further argues Alvarado fails to demonstrate cause and prejudice to excuse the procedural default, and fails to present any new, reliable evidence to excuse the default. (*Id.* at 37-39.)

Alvarado combined his response to these arguments with his response to the arguments regarding Ground Two. (Doc. No. 89 at 101-11.)

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth herein, the Court does not reach the merits of the parties' arguments with respect to this portion of Ground Three.

### b. Detective Goodlet's Testimony Regarding Alvarado's Statements Regarding a Knife

Respondent argues this portion of Ground Three is based on testimony available on the record, trial counsel could have objected to the redactions and asked for more of the exhibit to be played to the jury but did not, and this claim could have been raised on direct review. (Doc. No. 88 at 39.) Respondent further argues Alvarado fails to demonstrate cause and prejudice to excuse the procedural default, and fails to present any new, reliable evidence to excuse the default. (*Id.* at 40-44.)

Alvarado combined his response to these arguments with his response to the arguments regarding Ground Two. (Doc. No. 89 at 101-11.)

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth herein, the Court does not reach the merits of the parties' arguments with respect to this portion of Ground Three.

### c. Video from Bar

Respondent argues this portion of Ground Three could have been raised in a contemporaneous objection at trial and could have been raised on direct review. (Doc. No. 88 at 44.) Respondent further

argues Alvarado fails to demonstrate cause and prejudice to excuse the procedural default, and fails to present any new, reliable evidence to excuse the default.  (*Id.* at 44-45.)

Alvarado combined his response to these arguments with his response to the arguments regarding Ground Two.  (Doc. No. 89 at 101-11.)

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth herein, the Court does not reach the merits of the parties' arguments with respect to this portion of Ground Three.

### d.  Detective Goodlet's Testimony about Tips

Respondent argues that Alvarado's allegation "that the State allowed Detective Goodlet to testify falsely that 'that [sic] the Toledo Police Department received no tips relating to Henderson's death'" is procedurally defaulted as it was never raised in the state courts.  (Doc. No. 88 at 45.)  Respondent "urges" the Court to dismiss Alvarado's Amended Petition, rather than stay the case and hold it in abeyance, as Alvarado has not met the requirements under *Rhines v. Weber*, 544 U.S. 269 (2005).  (*Id.* at 46.)  In the alternative, Respondent asks the Court to allow Alvarado to "delete" the unexhausted claims from his Amended Petition and proceed with his exhausted claims.  (*Id.* at 47.)

Respondent argues Alvarado cannot show good cause because "open file discovery was provided" and "Alvarado acknowledges that the Crime Stopper Reports, [sic] were obtained from the Lucas County Prosecutor's Office's files."  (Doc. No. 88 at 46.)  Alvarado asserts:

> Until Wells recanted and this Court granted discovery, Alvarado could not have proven that the prosecutor knowingly solicited false evidence at trial.  Respondent seemingly implies that Alvarado was provided the evidence through "open discovery."  Doc. 88, PageID# 3691.  "Open discovery," however, does not mean that every single record or document possessed by the State is provided to the defense.  Indeed, sensitive investigatory records, such as Crime Stopper tips, and records the prosecutor determines are work product are not disclosed.  Ohio Crim. R. 16(D) and (J).  *See* Doc. 55 (Lucas County Prosecutor's Office Motion to Quash, alleging work product and/or law enforcement privilege); Doc. 57 (Toledo Police Department's Motion to Quash subpoena for "confidential" Crime Stopper

tips).  There is nothing in the record to suggest that the State disclosed the Crime Stopper tips, Bahner's case notes, or proof of Wells's agreement with the State to Alvarado.  *See United States v. Stifel*, 594 F. Supp. 1525, 1540 (N.D. Ohio Oct. 11, 1984) ("[T]he most persuasive indication that the defense did not possess this evidence is the fact that the defense never used this evidence at trial.").

(Doc. No. 89 at 51-52.)

Alvarado's argument is well-taken.  For purposes of determining whether the "good cause" factor of the *Rhines* test has been met, the Court finds Alvarado did not become aware of this information until well after his initial state post-conviction petition, and only received the Crime Stopper Tips through discovery allowed in this federal habeas proceeding.  *Cunningham*, 756 F.3d at 486.  Therefore, the Court finds Alvarado has demonstrated "good cause" for having failed to exhaust this portion of Ground Three.

Further, the Court finds this portion of Ground Three is not "plainly meritless," *i.e.,* it is potentially meritorious.  In order to establish a *Giglio* violation, a petitioner must demonstrate that a witness's statement was false; the statement was material; and the prosecution knew it was false.  *See Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998); *Rosencratz v. Lafler*, 568 F.3d 577, 583-584 (6th Cir. 2009).  The parties dispute how to interpret Detective Goodlet's testimony.  (Doc. No. 88 at 46; Doc. No. 89 at 49.) Alvarado asserts, "Even when specifically asked about receiving information 'seven days after' the homicide, Goodlet mentioned only Wells, not Crime Stopper tips, which, as Respondent concedes, had been received by that point."  (Doc. No. 89 at 49.)  Therefore, the Court cannot say, at this stage of the proceedings, that this portion of Alvarado's Third Ground for Relief is "plainly meritless."

Lastly, the Court finds there is no evidence that Alvarado has engaged in intentionally dilatory litigation tactics.  Wells executed his recantation affidavit in November 2015, and Alvarado promptly filed his Motion for Leave to file New Trial Motion and Petition for Post-Conviction Relief in state court the following month.  Alvarado filed his federal habeas petition on October 20, 2016 and has been diligently pursuing his rights both in the state courts and this court since that time.  Accordingly, with respect to the

unexhausted portion of Ground Three, Alvarado has satisfied the *Rhines* standard for a stay and abeyance in this case.

### 4.    Ground Four

Respondent argues Alvarado procedurally defaulted his insufficiency of the evidence claim by failing to present this claim on appeal to the Supreme Court of Ohio.  (Doc. No. 88 at 47.)  Respondent further argues Alvarado's manifest weight of the evidence claim "cannot be deemed inclusive" of his insufficiency of the evidence claim.  (*Id.*)

Alvarado responds that while he framed his claim as a manifest weight of the evidence claim before the Supreme Court of Ohio, "the substance of his argument was that his conviction was not supported by sufficient evidence" and he "cited to two leading Supreme Court cases related to sufficiency challenges."  (Doc. No. 89 at 111).  Alvarado argues he was not required to present his sufficiency of the evidence claim as a standalone claim in the state courts "[i]n order to fairly present and exhaust his sufficiency of the evidence claim."  (*Id.*) (citing *Whiting*, 395 F.3d at 613-15).

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth herein, the Court does not reach the merits of the parties' arguments with respect to Ground Four.

### 5.    Ground Five

In addition to arguing that Alvarado's free-standing actual innocence claim is non-cognizable on federal habeas review, Respondent further argues this claim is procedurally defaulted as it was first raised in Alvarado's motion for leave to file a motion for a new trial and petition for postconviction relief, which the state courts found to be untimely, and Alvarado fails to demonstrate cause and prejudice, or new, reliable evidence of actual innocence, to excuse the procedural default.  (Doc. No. 88 at 50-53.)

In response, Alvarado argues the state courts improperly applied a procedural bar to his fifth ground for relief.  (Doc. No. 89 at 113.)  However, Alvarado asserts that even assuming, *arguendo*, the

state courts properly applied this procedural bar to this claim, he can establish both cause and prejudice. (*Id.*)

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth herein, the Court does not reach the merits of the parties' arguments with respect to Ground Four.

### 6.    Ground Seven

Respondent argues first that other than Alvarado's claims of ineffective assistance of counsel with respect to his attorney's advice in plea negotiations, his attorney's failure to talk to Wells, and the alleged conflict of interest, his remaining claims "are conclusory without any argument in support."  (Doc. No. 88 at 53.)  Respondent further argues Alvarado's ineffective assistance of counsel claims are procedurally defaulted on the grounds of: raising an issue for the first time before the Supreme Court of Ohio; Alvarado's 26(B) allocation would not preserve the underlying claims; Alvarado's memorandum in support of jurisdiction and his 26(B) application were conclusory; his ineffective assistance of counsel claims in his motion for leave to file a motion for a new trial were likewise conclusory and omitted any claim that trial counsel was ineffective for failing to object to prosecutorial misconduct; the state courts found Alvarado's motion for leave to file a motion for a new trial untimely; and Alvarado failed to raise these claims in the first proceeding.  (*Id.* at 54-55.)  In addition, Respondent argues Alvarado cannot demonstrate cause and prejudice, or new, reliable evidence of actual innocence, to excuse the default.  (*Id.* at 56.)

Alvarado disputes Respondent's characterization of his ineffective assistance of counsel claims in his Petition as conclusory.  (Doc. No. 89 at 116.)  In addition, Alvarado responds he could not have raised his ineffective assistance of trial counsel claim in his direct appeal as he was represented by the same lawyer at trial and on appeal.  (*Id.*)  Alvarado asserts he properly raised his ineffective assistance of trial counsel claims in his 26(B) application and argues his underlying ineffective assistance of trial counsel

claim was preserved because "it would seem the court of appeals undertook a merits analysis." (*Id.* at 117.)  Alvarado maintains that, even if the Court should find this claim is procedurally defaulted, he can demonstrate cause and prejudice to excuse the default.  (*Id.*)  Moreover, Alvarado asserts he "has made a compelling case of actual innocence." (*Id.* at 118.)

Respondent maintains that Alvarado's claims raised in his Amended Traverse that trial counsel was ineffective for failing to introduce the surveillance video in Alvarado's case in chief and that trial counsel failed to investigate and call witnesses who would have stated they did not see Alvarado with a knife, that they saw Alvarado with two cell phones, and would have provided context to the video were not raised in Alvarado's initial Petition, Alvarado did not seek to amend his seventh ground for relief, and these claims were not raised in his Amended Petition.  (Doc. No. 90 at 41-42.)  As a result, Respondent asserts these claims are not properly before the Court.  (*Id.* at 42.)  Moreover, Respondent maintains "[t]here is no question that the claim of ineffective assistance of trial counsel regarding the surveillance video was not raised in the state courts," even though the claim "could have been, but was not, raised in Alvarado's petition for post-conviction relief." (*Id.*)  Respondent also asserts "the claim regarding the investigation and witnesses was not fairly presented to the state courts because Alvarado failed to brief and argue both the factual and legal substance of the claim." (*Id.*)  Respondent further argues that even if these claims had been raised in Alvarado's motion for leave to file a motion for a new trial, the state courts found that motion and Alvarado's petition for postconviction relief untimely, and Alvarado fails to demonstrate cause and prejudice, or new, reliable evidence of actual innocence, to excuse the default. (*Id.*)

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth herein, the Court does not reach the merits of the parties' arguments with respect to Ground Seven.

### 7. Ground Nine

Respondent argues Alvarado's claim that he was denied the right to conflict-free counsel has been procedurally defaulted as it was raised for the first time in Alvarado's motion for leave to file a motion for a new trial, which the state courts found untimely.  (Doc. No. 88 at 56-57.)  Respondent maintains Alvarado fails to demonstrate cause and prejudice, or new, reliable evidence of actual innocence, to excuse the procedural default.  (*Id.* at 58-59.)

In response, Alvarado argues the state courts improperly applied a procedural bar to his ninth ground for relief.  (Doc. No. 89 at 113.)  However, Alvarado asserts that even assuming, *arguendo*, the state courts properly applied this procedural bar to this claim, he can establish both cause and prejudice. (*Id.*)

As the undersigned recommends staying this case and holding it in abeyance for the reasons set forth herein, the Court does not reach the merits of the parties' arguments with respect to Ground Nine.

### V. Conclusion

Accordingly, and for all the reasons set forth above, it is recommended that this case be stayed and held in abeyance to allow Alvarado the opportunity to present his unexhausted claims to the state courts. It is further recommended that the stay be granted on the condition that Alvarado (1) file quarterly status reports in this Court regarding the progress of his state court appeal; and (2) seek reinstatement on this Court's active docket within thirty (30) days of fully exhausting his state court remedies.

**IT IS SO RECOMMENDED.**


Date:  December 7, 2020                    *s/ Jonathan Greenberg*
                                           Jonathan D. Greenberg
                                           United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).