**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Hector Alvarado**, ) | **CASE NO. 3:16 CV 2563** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| **Vs.** ) | |
| ) | |
| **Warden,** ) | **Memorandum of Opinion and Order** |
| **Ohio State Penitentiary,** ) | |
| ) | |
| **Defendant.** ) | |

**INTRODUCTION**

This matter is before the Court upon the Report and Recommendation ("R&R") of Magistrate Judge Jonathan D. Greenberg (Doc. 93) recommending that the Amended Petition for Writ of Habeas Corpus under 28 U.S.C. 2254 be stayed and held in abeyance to allow petitioner to present his unexhausted claims to the state courts. Respondent has filed an objection. For the reasons that follow, respondent's objection is overruled and the R&R is ACCEPTED. This matter is stayed and held in abeyance pending exhaustion of petitioner's claims in state court.

1

**STANDARD OF REVIEW**

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides that the district court reviews *de novo* those portions of a report of a magistrate judge to which a specific objection is made. The judge may accept, reject, or modify any proposed finding or recommendation. [1]

**DISCUSSION**

The Court set forth a brief statement of the facts in its previous Memorandum of Opinion and Order discussing a request for discovery and to expand the record:

> Petitioner was convicted by a jury of the murder of Christine Henderson who suffered a fatal wound to her neck at the South Beach Bar in Toledo in the early hours of January 1, 2013. He was sentenced in the Lucas County Court of Common Pleas in 2013. Petitioner's direct appeal was unsuccessful as was a R.26(B) motion to re-open. In December 2015, petitioner filed a motion for leave to file a motion for new trial wherein he relied on a newly acquired November 2015 affidavit of Charles Wells, the State's key witness. Petitioner also filed a petition for post-conviction relief the same day based on the affidavit. Wells had testified at trial that he was at the bar when a fight broke out. He observed petitioner involved in the commotion with an object in his hand. He saw petitioner swing the object which caused everyone to move away from him. Although his view was obscured at times, at one point he saw petitioner near Henderson. Wells saw petitioner swing at Henderson, with the object in his hand. She then walked away, grabbing her neck. Wells and his friends left the bar before the fight was over. Once outside, he saw petitioner leave the bar with a Mexican girl in one hand and a knife in the other hand. When Wells and his friends returned to the bar later that night to give another friend a ride home, Wells heard that Henderson had died and that Stacey

---

[1] Petitioner maintains that the Court should apply the standard of review set forth in Rule 72(a) which states that in the case of non-dispositive matters, the "district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." However, the Magistrate Judge has issued a Report and Recommendation on the Amended Petition which the Court does not consider to be an interim order on a non-dispositive matter. It, therefore, uses the *de novo* standard of review.

>Bowen (Henderson's fiancee) had killed her with a bottle.  Wells then said that night that Bowen did not do it and that petitioner did.  Wells later gave a recorded statement to a police detective.
>
>Wells's affidavit averred the following.  The prosecutor coached Wells and persuaded him to lie on the stand.  Wells observed the fight, and left the bar after it was over.  He never saw anyone with a knife.  Once outside the bar, the police were arriving and Wells learned from his friend, the bouncer, that a girl had been stabbed.  The bouncer told Wells a couple days later that the girl died.  Wells remembered Henderson from the past and that her mother had been good to him.  The family was so upset that Wells felt he had to help.  At the time Wells spoke to the detective, he had a drug case pending.  The prosecutor showed Wells the bar surveillance tape.  Wells was unable to identify "the man they wanted me to identify," but the prosecutor pointed him out.  The prosecutor promised he would make Wells' pending criminal case go away.  Wells knew petitioner's trial counsel, John Thebes, who owed Wells money from a previous case.
>
>Both the motion and petition were denied by the state court as untimely.  The rulings were affirmed.  The Petition herein was filed on October 20, 2016.  The case was stayed while the appeals were resolved in the state court.  After exhaustion, this matter was reinstated.

This Court previously accepted the Magistrate Judge's Order granting discovery as to Grounds 2 and 3 of the Petition, denying discovery as to Grounds 7 and 9, and granting petitioner's Motion to Expand/Complete the Record.  (Doc. 39).  Following discovery, petitioner sought to expand the record and file either an amended petition or traverse.  (Doc. 72, 73).  The Magistrate Judge issued an Order granting in part and denying in part both requests and directing petitioner to file an Amended Petition.  (Doc. 80).  The Court declined to set aside, as clearly erroneous or contrary to law, either part of the Magistrate Judge's Order despite respondent's objections to the Order.  (Doc. 85).  Accordingly, petitioner filed an Amended Petition which has been fully briefed.

The Amended Petition raises the following nine grounds for relief:

1) The prosecutor violated petitioner's right to a fair trial by making improper

3

and prejudicial statements.

2) The State violated petitioner's rights to due process and fair trial when it suppressed favorable, material evidence.

3) The State violated petitioner's rights to due process and fair trial when it presented false evidence or allowed it to go uncorrected.

4) The evidence against petitioner is insufficient to sustain his conviction, thus violating petitioner's due process rights under the 14th Amendment.

5) Petitioner is actually innocent of the crime for which he was convicted, and his convictions violate the 14th Amendment.

6) The trial court violated petitioner's rights to due process and fair trial by erroneously instructing the jury and relieving the State from its burden of proving every element of the offense charged beyond a reasonable doubt.[2]

7) Petitioner was denied his constitutional right to assistance of counsel provided by the Sixth Amendment.

8) Petitioner was denied his right to the effective assistance of appellate counsel.

9) Petitioner was denied his constitutional right to conflict free counsel when his attorney had both represented petitioner and the State's main witness against petitioner.

(Doc. 86).

In the R&R currently before the Court, the Magistrate Judge found that the portions of Grounds One, Two, and Three which were supported by new factual bases resulting from the discovery herein were unexhausted. The Magistrate Judge recommended that the case be stayed and held in abeyance to allow petitioner the opportunity to present these unexhausted claims to the state courts, in accordance with *Rhines v. Weber*, 544 U.S. 269 (2005).

Section 2254(b)(1) of the Antiterrorism and Effective Death Penalty Act of 1996

---

[2] Petitioner withdrew this ground for relief.

("AEDPA") provides that a federal court may not award habeas relief to an applicant in state custody unless it appears that:

> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). *See also Rose v. Lundy*, 455 U.S. 509 (1982). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This requirement, however, refers only to remedies still available at the time of the federal petition. *Engle v. Isaac*, 456 U.S. 107,125 n.28 (1982). If under state law there remains a remedy that a petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the claim. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

In *Rhines v. Weber*, the United States Supreme Court addressed what options a court has when faced with a habeas petition containing both exhausted and unexhausted claims, i.e., a "mixed petition." 544 U.S. 269, 274 (2005). It held that under certain "limited circumstances," a habeas court can, for good cause, stay the action and permit the petitioner to present his unexhausted claim to state court and then return to federal court for review of his fully exhausted petition. *Id.* at 277. This stay and abeyance procedure is appropriate when the habeas court determines that: (1) there was good cause for the petitioner's failure to exhaust his claims first in state court; (2) the petitioner's unexhausted claims are not plainly meritless; and (3) the petitioner has not engaged in abusive litigation tactics or intentional delay. *Id.* at 277–78. However, the

5

*Rhines* court cautioned that if this procedure is utilized too frequently, it "has the potential to undermine the[] twin purposes" of AEDPA, which was enacted to "'reduce delays in the execution of state and federal sentences, particularly in capital cases,'" and to encourage petitioners to seek relief from state courts first. *Id.* at 276-77 (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). But in the limited circumstances outlined above, "the petitioner's interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions." *Id.* at 278.

Respondent raises multiple objections relating to the Magistrate Judge's conclusion that petitioner has satisfied the *Rhines* standard for a stay and abeyance. The Court will address each of these objections in turn.

**1. Ground One**

In Ground One of the Amended Petition, petitioner argues that the prosecutor made improper and prejudicial statements in his closing argument. The first two remarks encouraged jurors to fear petitioner and presume his guilt based on his race, size, and tattoos:

> He is proud of it. I'm not judging Mr. Alvarado for putting that, those tattoos. That's – that's his own province, if you will. But he certainly doesn't look like anybody else, does he? There is a certain individuality about him. Mr. Alvarado, we talked about first impressions. I don't want you to judge anybody on their first impressions and we know that we shouldn't, but we get them. When you saw him walk into court what did you think? Probably what everyone else thinks that sees him. Is it any wonder that people see a man like this with a – wielding a knife –
>
> \*\*\*
>
> If you look that way, why do you do it? Mr. Alvarado's a big guy. Some people, it's arguable, they might be afraid of him. They might not know him. But they can look at him and say he's got a tear drop under his right eye. He's got "Cholo" tattooed on his head. He's got "Mexican" tattooed on the other side of his head. And he's got significant markings all around his face. It is possible

6

> that people might be afraid of him on looks alone? Is it possible that people may not want to be involved in a crime that they see him doing out of fear?

A third such remark encouraged jurors to conclude that no witnesses beside Charles Wells cooperated because they feared petitioner:

> I'm not saying he is a violent guy. He looks like he could be. Is it reasonable that people might be afraid of him on looks alone? Is it reasonable to believe that's why nobody wants to come forward? And if you have that fact, who are the witnesses that you're going to get in court? People like Charles Wells who are not afraid of him.

Petitioner argues that all three of these remarks were planned as evidenced by the prosecutor's notes made in preparation of trial. With respect to the third remark, petitioner contends that because the state had little evidence beyond Wells' testimony, the prosecutor purposely "insinuated that the reason the State did not have witnesses beside Wells was not because they did not exist, but because they feared Alvarado." Petitioner argues that this third remark was reinforced by Detective Goodlet's purportedly false testimony that the police received no Crime Stoppers tips.

In the R&R, the Magistrate Judge found the following portions of Ground One were unexhausted: (1) petitioner's arguments with respect to the third remark and (2) the argument that the prosecutor's comments were planned.

    *a.*    *Third Remark*

Respondent objects and maintains that the arguments pertaining to the third remark are procedurally defaulted. The Court disagrees. As noted by the Magistrate Judge, no argument was made with respect to the third remark at the state appellate court level and it was not specifically referenced in petitioner's 26(B) application. Within petitioner's brief to the Supreme Court of Ohio, petitioner referenced the first line of this third remark, but did not include any

7

argument regarding the portion of the remark pertaining to Wells or the lack of witnesses to come forward. Thus, this particular argument has never been presented to the state courts.

The Court acknowledges that in order for this argument to be unexhausted, rather than procedurally defaulted, petitioner must have a state remedy still available to him. *Engle*, 456 U.S. at 125 n.28. In Ohio, a petitioner may file a successive petition for post-conviction relief if he can show, among other things, that he was "unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief." O.R.C. § 2953.23(A)(1)(a). Here, petitioner's claim relies on the Crime Stoppers tips and the prosecutor's notes, both of which were not provided to petitioner until discovery in this federal habeas proceeding and have never been presented to the state courts. Accordingly, the Court agrees with the Magistrate Judge that the arguments with respect to this third remark are unexhausted. *See Cunningham v. Hudson,* 756 F.3d 477, 482 (6th Cir. 2014) ("Exhaustion under 28 U.S.C. § 2254(b) requires presentation of the same factual basis to the federal habeas court that was presented to the state court.")

   *b. Prosecutor Notes*

Within Ground One, petitioner also argues that all three of the prosecutor's remarks were planned based on trial notes obtained from the prosecutor's office in this federal habeas proceeding. Neither party disputes that petitioner did not present arguments to the state court regarding the prosecutor's notes. Accordingly, the Magistrate Judge concluded that because the "factual support for [petitioner's] prosecutorial misconduct claim has changed as a result of obtaining information in discovery during this habeas case," these particular arguments to support Ground One are unexhausted. Respondent makes no objections to this conclusion.

*c.    Rhines*

The Magistrate Judge next concluded that under *Rhines*, this case should be stayed and held in abeyance in order for petitioner to exhaust these particular arguments as to Ground One in state court. Respondent objects to this conclusion, arguing that petitioner does not meet the criteria for a *Rhines* stay and abeyance.

As stated above, under *Rhines*, the stay and abeyance procedure is only appropriate when (1) there was good cause for petitioner's failure to exhaust his claims first in state court; (2) the unexhausted claims are not plainly meritless; and (3) petitioner has not engaged in abusive litigation tactics or intentional delay. *Rhines,* 544 U.S. at 277–78.

In support of Ground One, petitioner relies, in part, on the following: (1) trial notes obtained from the prosecutor's office in this federal habeas proceeding; (2) the Crime Stoppers tips also obtained in this proceeding; and (3) the security footage taken from the scene of the crime that purportedly shows that Wells was not looking in the victim's direction when she was allegedly stabbed.

Upon review, the Court agrees with the Magistrate Judge that petitioner has demonstrated good cause for not raising these arguments in state court. Petitioner had neither the prosecutor's notes or the Crime Stoppers tips until discovery in this proceeding.

Respondent objects to this conclusion, arguing that petitioner has failed to demonstrate good cause because the security footage was part of the trial record. The Court finds this argument unavailing. The Ground One arguments raised in state court dealt exclusively with the first two comments made by the prosecutor, neither of which referenced Wells. During federal discovery, petitioner obtained the Crime Stoppers tips, which arguably contradict the

9

prosecutor's third remark that "nobody wants to come forward" besides Wells. Prior to this, Wells and his position on the surveillance video were unrelated to any arguments supporting the prosecutorial misconduct claim surrounding the first two remarks.

Respondent next suggests that the Crime Stoppers tips were provided to petitioner prior to trial. In support, respondent notes that open file discovery was conducted at the trial level. However, respondent does not point to any specific part in the record which confirms that the Crime Stoppers tips were provided during this open file discovery. As noted by the Magistrate Judge, the fact that open file discovery was conducted does not necessarily verify that every record possessed by the prosecutor's office was provided to petitioner. Indeed, the record suggests that the discovery provided to defense counsel prior to trial did not contain any Crime Stoppers tips. Accordingly, the Court rejects this argument.

Respondent alternatively argues that the Crime Stoppers tips "would not have been useful at trial." However, this is not relevant to the first prong under *Rhines*, i.e., good cause. Moreover, these tips do provide support for petitioner's argument. The prosecutor's third remark was that "nobody wants to come forward" with information regarding the case. However, the existence of Crime Stoppers tips arguably belies this statement.

Respondent next objects to the Magistrate Judge's conclusion that the second prong in *Rhines* is met, i.e., petitioner's arguments are not plainly meritless. In support, he observes that the trial court reminded the jury that arguments should not be considered as evidence. It is true that curative instructions by a trial court may rectify any error resulting from a prosecutor's improper remarks. *See United States v. Carter*, 236 F.3d 777, 787 (6th Cir. 2001) ("Ordinarily, a court should not overturn a criminal conviction on the basis of a prosecutor's comments alone,

especially where the district court has given the jury an instruction that may cure the error.") However, this does not render petitioner's claim "plainly meritless." Indeed, a prosecutor's comments can still amount to prejudicial error, despite a curative instruction. *See United States v. Hall*, 979 F.3d 1107, 1120 (6th Cir. 2020) (noting not all curative instructions will cure the prejudicial impact of improper statements made by a prosecutor). While the Court reserves judgment as to whether this claim has merit, it cannot say, at this point in the proceedings, that it is "plainly meritless."

Respondent also asserts that petitioner's argument that the comments were deliberate relates to a "two-part test previously utilized by the Sixth Circuit in reviewing claims of prosecutorial misconduct," which has now been rejected by the Supreme Court in "reviewing claims of prosecutorial misconduct on federal habeas review."

The Sixth Circuit applies a two-step framework when reviewing claims of prosecutorial conduct on direct appeal. *Stermer v. Warren*, 959 F.3d 704, 726 (6th Cir. 2020). Within this framework, the Sixth Circuit considers whether or not a prosecutor's remarks were deliberate. *Hall*, 979 F.3d at 1119. Respondent is correct that the Supreme Court has expressly found that this two-step framework can "not be used in cases where AEDPA deference applies." *Stermer,* 959 F.3d at 727 (citing *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012)).

However, this does not render petitioner's argument "plainly meritless." As noted by the Magistrate Judge, the correct standard for evaluating habeas claims for prosecutorial misconduct is set forth in *Darden v. Wainwright*, 477 U.S. 168 (1986). Under this standard, a court may consider whether the claimed misconduct was deliberate or accidental. *See Stermer*, 959 F.3d at 726 (finding that "the tactical context of the prosecutor's statements" may be considered under

11

*Darden*). Accordingly, this objection is not well-taken.

Respondent makes no objections to the Magistrate Judge's finding that petitioner has met the third prong of *Rhines*, i.e., he has not engaged in intentionally dilatory litigation tactics. Having reviewed the R&R as to this issue for clear error, the Court agrees with the findings and conclusions of the Magistrate Judge. Petitioner has been diligently pursuing his rights in both state and federal court.

**2. Ground Two**

In Ground Two of the Amended Petition, petitioner argues that the State withheld (1) evidence that Wells had told the prosecutor he was not able identify Alvarado and admitted that he did not see Alvarado holding a knife or striking the victim and (2) the existence of an agreement between the State and Wells for "favorable treatment in his pending criminal cases in exchange for his testimony against Alvarado."

In the R&R, the Magistrate Judge found that the factual basis to support this ground for relief had changed "as a result of obtaining information in discovery during this habeas case." The Magistrate Judge concluded that this changed factual basis had not been presented to the state courts and, therefore, the claim was unexhausted.[3] Respondent makes no objections to this

---

[3] When discussing this ground for relief, the Magistrate Judge briefly noted the discovery of the Crime Stoppers tips. Respondent objects, arguing that Ground Two does not raise a claim regarding the Crime Stoppers tips. Upon review, the Court agrees with respondent. Petitioner does not mention the Crime Stoppers tips in relation to Ground Two until his Traverse. It is well-established that a petitioner cannot raise claims for the first time in his Traverse. *Royster v. Warden*, 2018 WL 8138770, *2 (6th Cir. 2018). Accordingly, to the extent that petitioner is attempting raise a claim that the state suppressed the Crime Stoppers tips, this claim is not properly before the Court and will not be considered. *See Banks v. Burt*, 2020 WL 628467, *2 (6th Cir. 2020) ("Although the claims in Banks's reply share a common legal theory as some of those in his habeas petition

finding.[4]  Having reviewed the R&R as to this issue for clear error, the Court agrees with the Magistrate Judge's conclusion.

The Magistrate Judge next concluded that under *Rhines*, this case should be stayed and held in abeyance in order for petitioner to exhaust these new arguments as to Ground Two in state court.  Respondent objects to this conclusion, arguing that petitioner has not satisfied the "plainly meritless" prong of *Rhines*.

Respondent first argues that petitioner's *Brady* claim has no merit because he was provided Wells' videotaped interview during open file discovery.  A review of the record reveals that petitioner was provided with a copy of Wells' videotaped police interview prior to trial.  However, petitioner is arguing that the state either withheld or failed to memorialize Wells' statements to the prosecutor, not his interview with the police.

Respondent next argues that this ground for relief is plainly meritless because petitioner has not cited to any Supreme Court precedent which requires a "police department to preserve handwritten notes in addition to the typed reports incorporating those notes, or requiring the prosecutor's office to memorialize interviews or to preserve e-mails where there is no evidence of exculpatory information."  The Court is not persuaded by this argument.  As noted by petitioner, it appears respondent has "recast" this ground for relief as an allegation that the police department and the prosecutor's office are required to memorialize all interviews and retain all

---

. . . they concern new factual bases that were not presented in his petition and thus are new claims.")

[4]  The Court notes that respondent argues that the "claims from Charles Wells' affidavit" are procedurally defaulted, not unexhausted.  The Magistrate Judge declined to address this argument in light of the recommendation that this case be stayed and held in abeyance.

13

emails. But this is not what petitioner is arguing. Petitioner is arguing that the State either withheld or failed to memorialize Wells' statements to the prosecutor and the existence of a deal in exchange for his testimony, both of which are arguably exculpatory or impeachment evidence. *See Strickler v. Greene*, 527 U.S. 263, 281-282 (1999) (holding that when establishing a *Brady* violation, the "evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching.") In support, petitioner relies, in part, on deposition testimony and the prosecutor's notes obtained during federal discovery which suggest that Wells' story had "shifted" upon speaking with the prosecutor and that a deal with Wells had been discussed. While the Court declines to determine if petitioner has provided enough evidence to establish that a *Brady* violation occurred, it cannot say, at this point in the proceedings, that it is "plainly meritless."

Respondent makes no objections to the Magistrate Judge's findings with respect to the first and third prongs of *Rhines*. Having reviewed the R&R for clear error, the Court agrees with the conclusion of the Magistrate Judge that petitioner has satisfied both the first and third prongs of *Rhines*.

### 3. Ground Three

In Ground Three of the Amended Petition, petitioner argues that the prosecutor allowed false evidence to be presented to the jury. Petitioner contends that this false evidence included (1) Wells' testimony that he saw Alvarado stab the victim; (2) Wells' testimony that he was not provided with any favorable treatment in his pending criminal cases in exchange for his testimony; (3) Detective Goodlet's testimony that the police received no Crime Stoppers tips regarding the murder; and (4) Detective Goodlet's testimony regarding Alvarado's interview

14

with the police.

In the R&R, the Magistrate Judge found that the portion of Ground Three relating to Detective Goodlet's testimony concerning Crime Stoppers tips was unexhausted.[5] Respondent makes no objections to this conclusion. Having reviewed the R&R for clear error, the Court agrees with the conclusion of the Magistrate Judge.

The Magistrate Judge next determined that under *Rhines*, this case should be stayed and held in abeyance in order for petitioner to exhaust this new argument as to Ground Three in state court. Respondent objects to this conclusion, arguing that petitioner has not satisfied both the good cause and the plainly meritless prongs of *Rhines*.

With respect to good cause, respondent again argues that open file discovery was provided prior to trial. As noted above, the fact open file discovery was conducted does not necessarily confirm that the Crime Stoppers tips were provided to petitioner. Moreover, respondent does not direct this Court to the specific part of the record which verifies that the Crime Stoppers tips were provided during open file discovery. Accordingly, the Court rejects this argument and agrees with the Magistrate Judge that petitioner has established good cause. It does not appear that petitioner had access to these Crime Stoppers tips until federal discovery.

With respect to the plainly meritless prong, respondent maintains that "Detective Goodlet's testimony was correct in the context of the questioning." While the Court declines to decide this issue on the merits, petitioner has presented evidence that suggests that the accuracy of Detective Goodlet's testimony is debatable. A prosecutor's failure to correct false testimony

---

[5] The Court notes that respondent argues that the remainder of Ground Three is procedurally defaulted. The Magistrate Judge declined to address this argument in light of the recommendation that this case be stayed and held in abeyance.

15

can constitute a due process violation. *See Giglio v. United States*, 405 U.S. 150, 154 (1972); *Rosencrantz v. Lafler*, 568 F.3d 577, 583-584 (6th Cir. 2009). Accordingly, the Court agrees with the Magistrate Judge that this claim is not plainly meritless.

Finally, respondent argues that the Crime Stoppers tips "were not material or exculpatory." The Court disagrees. As noted above, the existence of these tips undercut the prosecutor's purported insinuation that no other individuals had come forward with information out of fear of petitioner.

Respondent makes no objections to the Magistrate Judge's findings with respect to the third prong of *Rhines*. Having reviewed the R&R as to this issue for clear error, the Court agrees with the Magistrate Judge's finding that petitioner has not been engaging in abusive litigation tactics or intentional delay.

Accordingly, with respect to the unexhausted portions of Grounds One, Two, and Three, the Court agrees with the Magistrate Judge's conclusion that petitioner has met the requirements for a stay and abeyance under *Rhines*. Respondent's objections are not well-taken.

**CONCLUSION**

For the reasons set forth above and for the reasons set forth in the Magistrate Judge's Report and Recommendation, which is incorporated herein, the Court stays this matter and holds it in abeyance pending exhaustion of the above-discussed claims in state court. The Court further orders that petitioner (1) file quarterly reports in this Court regarding the status of his efforts to exhaust these claims and (2) seek reinstatement on this Court's active docket within thirty (30) days of fully exhausting his state court remedies.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Chief Judge

Dated: 2/18/21